UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

SIERRA CLUB,                              )
                                         )
    Plaintiff                        )
                                         )
      vs.                         )    Case No. 13-CV- 21 -___
                                         )
MIDAMERICAN ENERGY COMPANY,               )
                                         )
    Defendant                        )
                                         )
                                         )

---

## CONSENT DECREE

---




Date lodged in Court: _____

Date entered by Court: _____

**CONSENT DECREE**

WHEREAS, Sierra Club ("Plaintiff") brought this action against MidAmerican Energy Company ("MEC") (collectively, the "Parties") pursuant to Sections 304 of the Clean Air Act (the "Act"), 42 U.S.C. § 7604, for declaratory and injunctive relief and assessment of civil penalties for certain alleged violations of the Act, its implementing regulations and terms of certain permits issued under the Act at MEC's Walter Scott Jr. Energy Center Boilers 1, 2, 3, and 4; Riverside Generating Station Boilers 7, 8, and 9, and George Neal Station Boilers 1, 2, and 3, all located in Iowa (individually, "Affected Facility" or collectively, "Affected Facilities");

WHEREAS, Plaintiff and MEC agree that the settlement of this action through this Decree without litigation is in the public interest, and is a fair, reasonable, and appropriate means of resolving the matter;

WHEREAS, MEC has denied and continues to deny the allegations in the Complaint, maintains that it has been and remains in compliance with the Act and is not liable for civil penalties or injunctive relief, and nothing herein shall constitute an admission of liability;

WHEREAS, the Parties desire to settle all matters by Consent Decree and avoid the costs, delay, and uncertainty of litigation; and

WHEREAS, the Parties consent to the entry of this Decree without trial of any issues; NOW, THEREFORE, without any admission of fact or law and without any admission of the allegations in the Complaint, it is hereby ORDERED AND DECREED as follows:

## I.   JURISDICTION, VENUE, AND APPLICABILITY

1.      This Court has jurisdiction over the Parties to and the subject matter of this action under Section 304 of the Act, 42 U.S.C. § 7604 and under 28 U.S.C. §§ 1331 and 1355.

2.      Venue is proper in this Judicial District under Section 304(c) of the Act, 42 U.S.C. § 7604(c), and under 28 U.S.C. §§ 1391 and 1395.

3.      Upon the Date of Entry, the provisions of this Decree shall apply to, be binding upon, and inure to the benefit of the Plaintiff, as well as Plaintiff's successors and assigns, and MEC, as well as MEC's successors and assigns.

4.      The Parties consent to entry of this Decree without further notice.

## II.   DEFINITIONS

5.      Unless otherwise expressly provided herein, terms used in this Decree that are defined in the Clean Air Act, 42 U.S.C. § 7401, *et seq.*, or regulations implementing the Clean Air Act, shall have the meaning set forth in the Clean Air Act or those regulations.

6.      Whenever the terms set forth below are used in this Decree, the following definitions shall apply:

> (a) "Approval" shall mean any authorization, consent, permission, approval, license, ruling, permit, exemption, variance, order, judgment, instruction, condition, direction, directive, decree, declaration of, or regulation by any governmental official, governmental agency, RTO, or national or regional reliability organization, including but not limited to the EPA, IDNR, NERC, MRO, and MISO.

3

(b)    "Baghouse" means a full stream (fabric filter or membrane) particulate emissions control device.

(c)    "Date of Entry" shall mean the date this Decree is approved or signed by the United States District Court Judge.

(d)    "Date of Lodging" shall mean the date this Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Southern District of Ohio.

(e)    "Day" shall mean, unless otherwise specified, calendar day.

(f)    "Decree" shall mean this Decree, and any written modifications of this Decree.

(g)    "EPA" shall mean the United States Environmental Protection Agency.

(h)    "FOIA" shall mean the Federal Freedom of Information Act, 5 U.S.C. § 552 *et seq.*

(i)    "Force Majeure" shall have the meaning set forth in Section IV (Force Majeure).

(j)    "George Neal Station" shall mean MEC's coal-fueled power plant located near Sioux City, Iowa.

(k)    "IDNR" shall mean the Iowa Department of Natural Resources.

(l)    "Louisa Generating Station" shall mean MEC's coal-fueled power plant located near Muscatine, Iowa.

(m)    "MISO" shall mean the Midwest Independent Transmission System Operator, Inc.

4

(n)     "MRO" shall mean the Midwest Reliability Organization.

(o)     "NERC" shall mean the North American Electric Reliability
Corporation.

(p)     "Parties" shall have the meaning set forth in the recitals.

(q)     "Riverside Generating Station" and "Riverside" shall mean MEC's
coal-fueled power plant located near Bettendorf, Iowa.

(r)     "RTO" shall mean any regional transmission operator or similar entity.

(s)     "State Fair Facility" shall mean MEC's exposition building at the Iowa
State Fair grounds.

(t)     "Term" of the Decree shall mean the period of time between the Date of
Lodging and the date the Decree is terminated in accordance with
Section XII (Termination).

(u)     "Title V" shall mean Title V of the Clean Air Act, 42 U.S.C. § 7661
through §7661f.

(v)     "Title V Permit" shall mean any operating permit issued to the Affected
Facilities by IDNR pursuant to Title V of the Clean Air Act.

(w)     "Walter Scott Energy Center" shall mean MEC's coal-fueled power
plant located near Council Bluffs, Iowa.

### III.     ACTIONS OF THE PARTIES

7.     MEC shall complete installation of baghouses at George Neal Station Boilers 3
and 4 by no later than December 31, 2014, and shall thereafter operate the baghouses at all times
(except as otherwise provided by Section IV (Force Majeure)), consistent with the technological

limitations, manufacturers' specifications, good engineering and maintenance practices, and good air pollution control practices for minimizing emissions.

8. On or before April 16, 2016, MEC shall cease burning coal at George Neal Station Boilers 1 and 2, Walter Scott Energy Center Boilers 1 and 2, and Riverside Boilers 7, 8, and 9 and shall not, thereafter, burn any solid fossil fuel (coal, coke, tires, or any derivatives thereof) in those boilers. Emission reductions that result from actions to be taken by MEC to comply with this paragraph shall not be considered as a creditable contemporaneous emission decrease for the purpose of netting or obtaining a credit or offset to apply for or comply with any Nonattainment New Source Review and/or Prevention of Significant Deterioration permit for any new solid fossil fuel burning emission units at the George Neal Station, Walter Scott Energy Center, or Riverside Generating Station. Notwithstanding termination of this Consent Decree pursuant to paragraph 29, the requirements of this paragraph are permanent and shall survive termination of this Consent Decree.

9. With respect to any matter related to or addressed by this Decree, Plaintiff shall not participate in any regulatory proceeding through which MEC is seeking an Approval in such a manner that Plaintiff's position conflicts with the agreement between the Parties set forth in this Consent Decree. In addition, Plaintiff shall not intentionally and specifically fund any other citizen groups' or governmental agency's participation in such proceedings.

10. Plaintiff shall not submit comments to any regulatory agency regarding, file a petition with any regulatory agency regarding, or seek objection to, any Title V permit or permit renewal for the George Neal Station, Riverside Generating Station, Louisa Generating Station or Walter Scott Energy Center during the Term of this Decree. In addition, Plaintiff shall not

6

intentionally and specifically fund any other citizen groups' or governmental agency's participation in such proceedings. This shall not prevent Plaintiff from submitting comments, filing a petition, seeking an objection, or otherwise opposing any pre-construction permits for proposals by MEC to expand, increase generation at, or add new generating units to those sites.

11.     Plaintiff shall withdraw and abandon its effort to obtain MEC documents and information related to the existing coal-fired units at the George Neal Station, Riverside Generating Station, Louisa Generating Station and/or Walter Scott Energy Center from IDNR and EPA related to using the authority provided under FOIA or any other similar law, and Plaintiff shall refrain from any similar efforts during the Term of this Decree. In addition, Plaintiff shall return to MEC all copies of documents obtained from EPA pursuant to Plaintiff's 2012 FOIA request (07-FOI-00549-12), with shipping costs paid by MEC. If MEC believes that Plaintiff is violating this paragraph, paragraph 9, or paragraph 10: (i) MEC shall provide Plaintiff with written notice of any alleged breach, (ii) within 30 days, Plaintiff shall cure such breach by promptly withdrawing from the proceeding and dismissing any petitions, issues, or claims raised by Plaintiff in the proceeding, and (iii) MEC's sole remedy for a breach shall be specific performance.

12.     MEC shall fund and implement a supplemental environmental project involving the generation of electric power from solar photovoltaic technology at the Iowa State Fair, subject to the State Fair's approval, as set forth in the attached Appendix.

## IV.     FORCE MAJEURE

13.     For purposes of this Decree, a "Force Majeure Event" shall mean any event that has been or will be caused by circumstances beyond the reasonable control of MEC or any entity

7

controlled by MEC that delays fulfillment of any obligation required under this Decree, despite MEC's diligent efforts to fulfill the obligation. "Diligent efforts to fulfill the obligation" shall mean using reasonable best efforts to anticipate any foreseeable Force Majeure Event and to address the effects of any such event (a) as it is occurring and (b) after it has occurred, such that the delay is minimized.

14.     The Parties agree that, depending upon the circumstances related to an event and MEC's response to such circumstances, the events listed below are examples of the types of events that the Parties agree qualify as Force Majeure Event within the meaning of this section, provided they meet the definition above: (i) construction or labor delays, including strikes and work stoppages or slowdowns, and any delays in delivery of raw materials or other equipment or components; (ii) malfunction of a unit or emission control or monitoring device that could not have been prevented through adequate engineering, maintenance, design, operation, or other steps; (iii) unavoidable fuel supply interruptions for which no reasonable alternative fuel supply exists; (iv) acts of God and acts of war or terrorism; (v) orders, rulings, determinations, or similar actions of any government official, government agency, other regulatory authority, RTO (*e.g.*, MISO) or any national or regional reliability organization (*e.g.*, NERC or MRO) acting under lawful authority requiring MEC to supply electricity from one or more of the Affected Facilities subject to this Decree so long as such order is in direct response to a reliability determination or is necessary to preserve reliability of the bulk power system, provided that MEC has made reasonable efforts to avoid such order, ruling, determination or similar action and acts as expeditiously as practical to implement any changes, upgrades, or other steps that would alleviate or eliminate the basis for such order, ruling, determination or similar action; and (vi)

failure to obtain an Approval necessary for the required action for which MEC has diligently taken all reasonable steps to obtain. This list is intended to be illustrative and not exhaustive. However, unanticipated or increased costs or expenses associated with the performance of MEC's obligations under this Decree shall not constitute a Force Majeure Event.

15.     If MEC intends to assert a claim of Force Majeure, MEC shall notify Plaintiff electronically within a reasonable time and adopt reasonable measures to minimize any delay in fulfillment of the obligations of this Decree. In the notice, MEC shall include a reference to this section of the Decree, a description of the anticipated length of time that the delay may persist, a description of the cause or causes of the delay, a summary of measures taken or to be taken by MEC to prevent or minimize the delay, the schedule by which MEC proposes to implement those measures, and MEC's rationale for attributing a delay to a Force Majeure Event.   MEC shall be deemed to know of any circumstance which they, or any entity controlled by them, knew or should have known. If MEC fails to materially satisfy this notice requirement, Plaintiff may void MEC's claim of Force Majeure as to the specific event for which MEC has failed to comply with the notice requirements.

16.     If the Plaintiff agrees that a delay has been or will be caused by a Force Majeure Event, the Parties shall stipulate to an extension of the affected deadline or deadlines for fulfillment of the relevant Decree obligations by a period equal to the delay actually caused by the event.

17.     If Plaintiff does not accept MEC's claim of Force Majeure, or the Parties cannot agree on the length of delay caused by a Force Majeure Event, Plaintiff shall first notify MEC of its disagreement in writing within a reasonable time and seek to resolve the dispute informally

9

for 30 calendar days, which period may be extended upon mutual agreement of the Parties. If such informal dispute resolution is not successful, MEC may either abandon its claim of Force Majeure or petition the Court for resolution of the dispute within 30 calendar days of the end of the 30-day informal resolution period herein, and shall serve a copy of the petition on Plaintiff in accordance with Section V (Notifications and Recordkeeping). Plaintiff shall have 30 calendar days following receipt of MEC's petition to respond by filing a reply with the Court and serving the reply on MEC.   This Court shall not draw any inferences nor establish any presumptions adverse to either Party as a result of invocation of this Section or the Parties' inability to reach agreement.   As a part of the resolution of any matter submitted to the Court under this section, the Parties may by agreement, or this Court may by order, extend or modify the schedule for compliance with this Decree, as appropriate, to account for any delay agreed to by the Parties or approved by the Court (provided that MEC shall not be precluded from asserting a further claim of Force Majeure to the revised schedule).

18.    In any dispute regarding Force Majeure, MEC shall bear the burden of proving that any delay in fulfillment of an obligation was caused or will be caused by a Force Majeure Event. MEC shall also bear the burden of proving that MEC gave the notice required by this section and the burden of proving the anticipated duration and extent of any delay(s) attributable to the Force Majeure Event. An extension of one compliance date based on a particular event may, but will not necessarily, result in an extension of a subsequent compliance date.

19.    Subject to the provisions in this section, if a Force Majeure Event delays fulfillment of any obligation under this Decree, such delay shall not be considered a violation of this Decree to the extent attributable to the Force Majeure Event.

## V.   NOTIFICATIONS AND RECORDKEEPING

20.   All notifications, submittals, reports, and other information required by this

Decree shall be directed to the individuals at the addresses specified below, unless those

individuals or their successors give notice of a change to the other Party in writing.

For the Plaintiff:

David C. Bender
James N. Saul
McGillivray Westerberg & Bender LLC
211 S. Paterson St., Suite 320
Madison, Wisconsin 53703
(608) 310-3560
bender@mwbattorneys.com
saul@mwbattorneys.com

Director of Environmental Law Program
Sierra Club
85 Second Street, 2nd Floor
San Francisco, CA 94105
(415) 977-5709

For MEC:

Cathy S. Woollums, Senior Vice President, Environmental
Services, and Chief Environmental Counsel
MidAmerican Energy Company
106 E. Second Street
Davenport, Iowa 52801
Phone:   (563) 333-8009
cswoollums@midamerican.com

Steven R. Weiss, Senior Vice President and General Counsel
MidAmerican Energy Company
4299 NW Urbandale Drive
Urbandale, Iowa 50322
Phone:   (515) 281-2644
srweiss@midamerican.com

Margaret Claiborne Campbell
Troutman Sanders LLP
600 Peachtree Street, NE Suite 5200
Atlanta, Georgia   30308-2216
Phone:   (404) 885-3410
margaret.campbell@troutmansanders.com

## VI.    EFFECT OF SETTLEMENT

21.    This Decree represents full and final settlement between the Parties and resolves by way of release and settlement any and all civil claims, causes of action, demands, actions and/or rights of action, of whatever kind or nature that Plaintiff may have against MEC, known or unknown, developed or undeveloped, that arose pursuant to opacity standards and/or New Source Review provisions under the Clean Air Act arising out of any operations, emissions, or modifications commenced prior to the Date of Entry of this Decree at the Walter Scott Energy Center, Riverside Generating Station, Louisa Generating Station and George Neal Station. This release and settlement shall survive termination of this Decree as an agreement between the Parties.

22.    Except as expressly stated herein, the Plaintiff reserves all legal and equitable remedies available to enforce the provisions of this Decree and for any claims arising after the effective date of this Decree, and MEC reserves all rights to defend against any such efforts.

23.    The failure of any Party to comply with any requirement contained in this Decree will not excuse the obligation to comply with other requirements contained herein.

## VII.    COMPLIANCE WITH OTHER LAWS

24.    This Decree is not a permit, and it does not relieve MEC of its responsibility to comply fully with all federal, state, and local laws and regulations, Orders of this Court, and

provisions of the Iowa State Implementation Plan, including any modifications or revisions thereto, that may be applicable.

## VIII. ATTORNEYS FEES AND COSTS

25.     Within 30 days after the Court approves this Consent Decree, MEC shall pay $35,000 to Plaintiff for Plaintiffs' actual attorneys fees and litigation costs associated with Plaintiff's Complaint and development and entry of this Decree.   Plaintiff hereby waives and releases any further right or claim to attorneys fees or costs under any applicable law for its efforts to enforce the Clean Air Act against MEC through the date of entry of this Consent Decree. Nothing herein shall preclude Plaintiff from seeking, nor MEC from opposing, an award of fees for any efforts necessary to enforce this Consent Decree after its entry by the Court, to the extent allowed by law.

## IX.     MODIFICATION

26.     Material modifications of this Decree must be in writing, signed by the Parties, and approved by this Court. No Party may petition this Court for a modification without having first made a good-faith effort to reach agreement with the other Parties on the terms of such modification. Non-material modifications to this Decree may be made only upon written agreement of the Parties that shall be filed with the Court.

## X.     RETENTION OF JURISDICTION

27.     Until termination of this Decree, this Court shall retain jurisdiction over both the subject matter of this Decree and the Parties to this Decree to enforce the terms and conditions of this Decree.   Following termination, the Court shall retain jurisdiction to enforce the provisions and obligations set forth herein that are permanent.

## XI.  ENFORCEMENT

28.     Enforcement of this Decree shall be undertaken exclusively by the Court that enters this Decree. The parties agree that specific performance is the appropriate and sole remedy in the case of any breach determined by the Court.   No other tribunal shall have jurisdiction over enforcement of this Decree, except through a direct appeal provided by law from the orders of this Court. Either party may petition the Court to enforce the Decree if it believes such action is necessary.

## XII.  TERMINATION

29.     This Decree shall automatically terminate on April 16, 2016.   However, if Plaintiff disputes that MEC has fulfilled its obligations under this Decree, the Decree shall terminate upon the resolution of the dispute and, if required, the fulfillment of any outstanding obligations under the Decree. Termination of this Decree shall not affect any matter expressly set forth in this Decree that is to survive as an agreement between the Parties.

## XIII.  LODGING AND ENTRY OF DECREE

30.     The Parties agree to cooperate in good faith in order to obtain the Court's review and entry of this Decree.

31.     Pursuant to 42 U.S.C. § 7604(c)(3), this Decree will be lodged with the Court and simultaneously presented to the United States for its review and comment for a period of 45 days. After the review period has elapsed, the Decree may be entered by the Court. If the Decree is not entered by the Court, the Parties shall retain all rights they had in this litigation before the Date of Lodging.

32.     The Parties agree to cooperate in good faith in order to expeditiously obtain EPA and United States Attorney General (Department of Justice, or "DOJ") review and District Court approval. In the event that DOJ or EPA comments upon the terms of this Decree, the Parties agree to discuss such comments and any revisions to the Decree as may be appropriate.

## XIV.  SIGNATORIES

33.     Each undersigned representative of a Party to this Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind such Party to this Decree.

34.     Plaintiff and MEC hereby agree not to oppose entry of this Decree by this Court or challenge any provision of this Decree.

## XV.   COUNTERPARTS

35.     This Decree may be signed in counterparts.

THE UNDERSIGNED Parties enter into this Decree and submit it to this Court for approval and entry.

SO ORDERED:

_____
UNITED STATES DISTRICT JUDGE

Dated this 12 day of April, 2013.

15

**For Plaintiff Sierra Club:**

_(signature)_

Date: _(handwritten)_

Bruce Nilles
Senior Director, Beyond Coal Campaign
Sierra Club
85 Second Street
San Francisco, CA 94105

As to form:

_(signature)_

Date: _January 15, 2013_

David C. Bender
McGillivray Westerberg & Bender LLC
211 S. Paterson St., Suite 320
Madison, Wisconsin 53703

**For Defendant MidAmerican Energy Company:**

_(signature)_

Date: _1/16/2013_

William J. Fehrman
President and Chief Executive Officer
MidAmerican Energy Company
666 Grand Avenue
Suite 500
Des Moines, Iowa 50309

As to form:

_(signature)_ _R. Weiss_

Date: _January 16, 2013_

Steven R. Weiss
Senior Vice President and General Counsel
MidAmerican Energy Company
666 Grand Avenue, Suite 500
Des Moines, Iowa 50309
Phone: (515) 281-2976
srweiss@midamerican.com

As to form:

_Cathy M Woollums_                            Date:   _January 16, 2013_

Cathy S. Woollums
Senior Vice President, Environmental Services and Chief Environmental Counsel
MidAmerican Energy Holdings Company
106 E. Second Street
Davenport, Iowa 52801
Phone:   (563) 333-8009
cswoollums@midamerican.com

**Appendix to Consent Decree**

*Sierra Club v. MidAmerican Energy Company*

### Solar Photovoltaic (PV) Panels Project

A. Within 12 months after entry of this Consent Decree, MidAmerican Energy Company (MEC) shall install fixed-tilt or tracking photovoltaic (PV) panels and the associated equipment to connect to the State Fair distribution system (PV system) at the Iowa State Fair fairgrounds in Des Moines, Iowa.

B. The PV system will consist of, at a minimum, the installation of ground- or roof-mounted solar panels with reasonably unobstructed solar access, with an installed capacity of at least 60 kilowatts[1] direct current; an inverter appropriately sized for the capacity of the solar panels installed at the location; the appropriate solar panel mounting equipment; wiring, conduit, and associated switchgear and metering equipment required for interconnecting the solar generator to the State Fair distribution system; appropriate monitoring equipment supported by a display to enable attendees at the State Fair and State Fair staff to monitor the total and hourly energy output of the system (kilowatt hours), environmental benefits delivered (pounds $CO_2$ avoided), hourly ambient temperature, as well as voltage, power and current metrics available from the inverter. The PV system shall be accompanied by one or more displays in a reasonably prominent location at the State Fair fairgrounds that shows the energy system output and other measurements, as well as providing information about distributed solar generation, the related federal and state tax credits, and net metering tariffs (including MEC's net metering tariff).

---

[1] Sierra Club and MEC agree that this is the maximum size that current space allows. This shall be in addition to any solar energy system currently located at the State Fair fairgrounds.

C. While MEC shall retain the investment tax credits, the energy output and all value of such energy from the PV system, including all environmental benefits, green energy attributes, and renewable energy credits, shall be conveyed to the Iowa State Fair. If the Iowa State Fair is unable to accept the energy and/or other value derived from the PV system, MEC and Sierra Club agree to cooperate to find an alternative appropriate recipient, who shall be a registered 501(c)(3) organization.

D. MEC shall not use the PV system or its output to comply with any renewable energy, green energy, or low-carbon energy requirements imposed by law.

E. MEC shall ensure that the PV system includes a standard manufacturer parts warranty good for the life of the project, if available on commercially reasonable terms, but for a term no less than 10 years, and Project Service Contract(s)[2], and MEC will use certified and qualified electricians to perform the installation of the PV system to ensure the highest quality installation and performance of the system.

---

[2] The Project Service Contract(s) for maintenance of the PV system shall be for no less than 10 years from the date of installation including but not limited to, annual system checkups and solar module cleaning, and normal component replacements, including installation of new system components as needed to maintain the PV system. Such individual contract terms may be shorter than 10 years, as long as an agreement remains in place for the 10 year period.